Larry M. Golub (SBN CA 110545)
lgolub@hinshawlaw.com
Vivian I. Orlando (SBN CA 213833)
vorlando@hinshawlaw.com
HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
Telephone:     213-680-2800
Facsimile:     213-614-7399

Attorneys for Defendant
TRANSAMERICA LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERYL CLARK, Individually, as Successor-in-Interest to Delaine Stowell, on Behalf of the Estate of Delaine Stowell, and on Behalf of the Class,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation,<br><br>Defendant. | Case No. 2:20-cv-00539-JAM-DB<br><br>(Hon. John A. Mendez)<br><br>**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF SHERYL CLARK'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  August 11, 2020<br>Hearing Time:  1:30 p.m.<br>Courtroom:      6<br><br>[Filed concurrently with (i) Declaration of Darlene Edwards; (ii) Declaration of Elizabeth Smith; (iii) Declaration of Heather Thomas; (iv) Request for Judicial Notice; and (v) [Proposed] Order]<br><br>Complaint Filed:  March 10, 2020<br><br>Trial Date:  Not Set |

1

**TO THE COURT, TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2020, at 1:30 p.m. or as soon thereafter as the matter be heard in Courtroom 6, 14th Floor of the above-entitled court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, Defendant Transamerica Life Insurance Company ("TLIC") will move the Court to dismiss the action filed pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).

The named Plaintiff Sheryl Clark's ("Plaintiff") First Amended Complaint fails in its entirety and should be dismissed with prejudice because the statutes she relies upon to support her claims, California Insurance Code sections 10113.71 and 10113.72, do not apply as a matter of law to the group life insurance policy under which Plaintiff seeks coverage.

TLIC's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Darlene Edwards, Elizabeth Smith and Heather Thomas, the accompanying Request for Judicial Notice, all other matters of which judicial notice may be taken, and such oral argument as the Court may permit at the hearing on this Motion.

The Parties met and conferred as required by the Court's standing order and were unable to come to any agreement regarding the issues raised herein. This Motion is made following the conference of counsel pursuant to the Court's standing order which took place on June 12, 2020.

DATED:     June 19, 2020                    HINSHAW & CULBERTSON LLP

By: /s/ *Vivian I. Orlando*
        Larry M. Golub
        Vivian I. Orlando
        Attorneys for Defendant
        TRANSAMERICA LIFE INSURANCE
        COMPANY

**HINSHAW & CULBERTSON LLP**
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

# **TABLE OF AUTHORITIES**

**Page(s)**

I.      INTRODUCTION ........................................................................................... 1

II.     MATERIAL ALLEGED FACTS ................................................................... 1

    A.      The Statutes .................................................................................... 2

    B.      The Alleged Facts Regarding Named Plaintiff and The Decedent ............................ 4

    C.      The Claims for Relief Alleged in This Action ............................. 6

III.    THERE WAS NO "POLICY" ISSUED TO STOWELL AND THE GROUP POLICY WAS ISSUED AND DELIVERED TO JCP COMPANY OUTSIDE OF CALIFORNIA ................................................................................................. 6

IV.     LEGAL STANDARD FOR MOTIONS TO DISMISS ......................................... 9

V.      THE STATUTES DO NOT APPLY TO THE GROUP LIFE INSURANCE POLICY BECAUSE IT WAS ISSUED AND DELIVERED OUTSIDE OF CALIFORNIA ............. 9

VI.     THE LEGISLATIVE HISTORY OF THE STATUTES FURTHER CONFIRMS THEIR INAPPLICABILITY TO THE GROUP LIFE POLICY ........................... 11

VII.    PLAINTIFF'S RESORT TO INAPPLICABLE INSURANCE CODE PROVISIONS AND ARGUMENTS DIVORCED FROM THE PLAIN LANGUAGE OF THE STATUTES CANNOT ELEVATE A CERTIFICATE OF INSURANCE TO AN INDIVIDUAL OR GROUP POLICY ...................................................................... 13

VIII.   CONCLUSION ............................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Coburn v. Sievert,*
133 Cal. App. 4th 1483 (2005) .......................................................................... 11

*Daniel-Hall v. Nat'l Educ. Assn.,*
629 F. 3d 992 (9th Cir. 2010) .............................................................................. 9

*Gerritsen v. Warner Bros. Entm't Inc.,*
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .............................................................. 7

*Heighley v. J.C. Penney Life Ins. Co.,*
257 F. Supp. 2d 1241 (C.D. Cal. 2003) .............................................................. 9

*Hinds Invs., L.P. v. Angioli,*
654 F.3d 846 (9th Cir. 2011) ............................................................................... 9

*Marder v. Lopez,*
450 F. 3d 445 (9th Cir. 2006) .......................................................................... 7, 9

*McCarther v. Pacific Telesis Group,*
48 Cal.4th 104 (2010) ......................................................................................... 4

*McHugh v. Protective Life Insurance Company,*
40 Cal. App. 5th 1166 (2019) ........................................................................... 10

*Mendoza v. Nordstrom, Inc.,*
2 Cal.5th 1074 (2017) ......................................................................................... 4

*Reese v. Malone,*
747 F.3d 557 (9th Cir. 2014) ............................................................................... 9

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ............................................................................... 9

**Statutes**

California Business & Professions Code sections 17200 *et seq.* .......................... 6

California Insurance Code section 41 ................................................................... 14

California Insurance Code section 42 ................................................................... 14

California Insurance Code section 786 ................................................................. 11

California Insurance Code section 10112.5 .......................................................... 11

ii

California Insurance Code section 10113.4 ...................................................... 11

California Insurance Code section 10113.71 ............................................ 1, 3, 10, 15

California Insurance Code section 10113.72 ............................................ 1, 3, 10, 15

California Insurance Code section 10205 ...................................................... 15

California Insurance Code section 10209.1 .................................................... 11

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) ...................................................... 9

Federal Rules of Evidence 201(b) ................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Desperate to save her claims despite the fact that the statutes she relies upon do not apply to the group policy at issue, Plaintiff Sheryl Clark's ("Plaintiff") First Amended Complaint ("FAC") adds largely repetitive allegations which do nothing to solve the fundamental problems with her lawsuit. Her purported class action continues to rely upon the alleged violations of California Insurance Code sections 10113.71 and 10113.72 ("the Statutes"). The Statutes, however, only apply to life insurance policies *issued or delivered in California* and, with one exception inapplicable to the facts of this case, to *individual* life insurance policies. The unassailable problem with Plaintiff's lawsuit is that the life insurance coverage under which the named Plaintiff seeks coverage and claims to have incurred a violation of the Statutes was a *group life insurance policy* – not an individual life insurance policy – and that group policy was *not issued or delivered in California*. Plaintiff's overreaching attempt to fit the group policy within the scope of the Statutes is totally misguided and her tortured allegations seeking to present a viable claim are nonsensical. Simply put, Plaintiff possesses no claims under the Statutes and this lawsuit should be dismissed with prejudice.

## II.   MATERIAL ALLEGED FACTS[1]

For the most part, Plaintiff's FAC merely regurgitates the allegations in the initial complaint, and add the terms "group" and "certificate" throughout without thought or coherent analysis of what the Statutes actually say. Plaintiff also argues that a certificate holder is the policy owner, that Plaintiff's mother, Delaine Stowell ("Stowell"), was a person with an interest in the group policy, and that a certificate is equivalent to a group policy or an individual policy. *E.g.,* FAC, ¶¶23, 25, 39, 42. But these disjointed and incoherent arguments demonstrate a lack of understanding of how group coverage operates and must be rejected under the plain language of the Statutes, as well as the actual Legislative History that TLIC has provided. In effect, Plaintiff seeks to apply the Statutes in full to both group and individual policies irrespective of issuance or delivery, and effectively eliminate any distinction between the two. This is completely improper and such efforts must be rejected.

The only really new and fabricated claim is that Transamerica Life Insurance Company

---

[1] For this motion only, TLIC recites Plaintiff's allegations without admitting their truth.

("TLIC") somehow engaged in intentional fraud by providing a longer grace period than the certificate or group policy required to pay premiums. *See, e.g.,* FAC, ¶10. This new theory is fundamentally flawed because, among other things, it is dependent on the Statutes that do not apply to the group policy at issue here and also is contradicted by the notices sent to Plaintiff's mother that shows that she was provided with more than a 60-day period to pay her premium. TLIC cannot be held liable for breach of contract or unfair competition based on intentional fraud for claimed obligations here that are neither stated in the policy nor required by law, and the fact is that Stowell had been given a 60-day grace period and Plaintiff's claim was ultimately paid.

Plaintiff's FAC commences by urging that TLIC "refuses to comply with mandatory provisions of the California Insurance Code as well as California common law regulating the lapse and termination of individual and 'group' life insurance policies." FAC, ¶1. It also vaguely alleges that TLIC misrepresented the terms and conditions of its grace periods, which caused injury to Plaintiff and others despite notices provided to Stowell. *Id.* ¶1, 10. After further introductory charging allegations concerning the purported failure to comply with the Statutes (which Plaintiff asserts apply in full to group policies), she alleges that Plaintiff, on behalf of herself and the purported class, "brings this action to recover for the injuries and damages resulting from these violations." FAC, ¶11.[2]

### A. <u>The Statutes</u>

Beginning at paragraph 21, the FAC addresses the "enactment and applicability" of the Statutes. Paragraph 20 advises that the California Legislature enacted the Statutes in 2012, and paragraph 25 states that the Statutes became effective January 1, 2013. While the FAC's allegations reference purported protections of the Statutes extended to group policies and certificates of insurance, and that certificate holders were to be treated the same as individual policy owners and individuals with an interest in the Policy, these statements are not consistent with the language of the actual Statutes and Legislative history discussed below. FAC, ¶¶23, 31. Plaintiff also plays loose with the specific provisions and requirements of the Statutes, but paragraph 29 of the FAC quotes the Statutes verbatim:

---

[2] Footnote 1 advises that all references to Sections 10113.71 and/or 10113.72 are collectively referred to as the "Statutes." TLIC uses the same convention in this motion.

**§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement**

    (a) Every life insurance policy *issued or delivered in this state* shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

    (b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer *to the named policy owner*, a designee named pursuant to Section 10113.72 for an *individual life insurance policy*, and a known assignee or other person having an interest in the *individual life insurance policy*, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

    (2) This subdivision shall not apply to nonrenewal.

    (3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

    (c) For purposes of this section, a life insurance policy includes, but is not limited to, *an individual life insurance policy and a group life insurance policy*, except where otherwise provided.

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

    (a) An *individual life insurance policy* shall not be *issued or delivered in this state* until the applicant has been given the right to designate at least one person, in addition to the applicant  to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

    (b) The insurer shall notify *the policy owner* annually of the right to change the written designation or designate one or more persons. The *policy owner* may change the designation more often if he or she chooses to do so.

    (c) No *individual life insurance policy* shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the *policy owner* and to the person or persons designated pursuant to subdivision (a), at the address provided by the *policy owner* for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid." (Emphasis added.)

As can be seen by the emphasized text, both sections 10113.71 and 10113.72 commence with the Legislature's language "issued or delivered in this state." Just as significantly, the entirety of Section 10113.72 is only directed to an "individual life insurance policy" and the "policy owner." There is no reference whatsoever to any "insured" under a group policy, let alone a "certificate holder"

1   under a group policy.

2       Well-established principles of statutory construction dictate that language must be construed

3   in the context of the statute as a whole with each subsection harmonizing the other. *See Mendoza v.*

4   *Nordstrom, Inc.*, 2 Cal.5th 1074, 1087 (2017); M*cCarther v. Pacific Telesis Group*, 48 Cal.4th 104,

5   110 (2010). Plaintiff's argument that a certificate holder under a group policy issued outside

6   California is covered by the Statutes contravenes a fundamental canon of statutory construction that

7   the Legislature would not intend for one subsection of a statute to operate in a manner that is markedly

8   dissimilar from another subsection in the same statute.

9       Additionally, while Section 10113.71 does state in subsection (c) that, for ***this section***, a life

10  insurance policy includes both an individual and a group life insurance policy, each and every

11  provision in that section refers to the "policy owner" or a designee of an "individual" life insurance

12  policy, and again there is no reference whatsoever to a "certificate holder" under a group policy or

13  even any "insured" under such a policy. Moreover, under Section 10113.71(b)(1), only persons who

14  have an interest in an ***individual*** life insurance policy are entitled to notice.

15      Plaintiff spends ample time in her FAC alleging that the certificate of insurance was issued or

16  delivered in California (*e.g.,* FAC, ¶¶40, 41), but this is irrelevant because issuance and delivery

17  applies to the group policy. Plaintiff also cites other Insurance Code provisions or otherwise attempts

18  to argue that the Certificate was individualized and therefore conveys status to Stowell as a policy

19  owner or that the Certificate amounts to an individual policy or that Stowell was a person of interest

20  under a non-existent individual policy, but as discussed below, none of these claims have merit and

21  they are logically flawed, inconsistent with the language in the Statutes and the Legislative History.

22  FAC, ¶¶4, 19, 23, 38, 41, 42, 52. Plaintiff also suggests that the Group Policy produced and the

23  Certificate she attaches as Exhibit B should be the same, but this argument makes no sense as one is

24  a Group Policy and the other is a Certificate of Insurance issued under a Group Policy. FAC, ¶48.

25      **B.    The Alleged Facts Regarding Named Plaintiff and The Decedent**

26      The named Plaintiff brings this action "in her individual capacity and as the heir and

27  successor-in-interest of the decedent and insured, Delaine Stowell, and on behalf of the Estate of

28  Delaine Stowell," and on behalf of the class and sub-class she seeks to represent and as is defined in

                                                    4

paragraph 69. FAC, caption page, ¶¶13, 69. Plaintiff is the daughter of decedent Stowell and the beneficiary of the life insurance policy under which Stowell was an insured. FAC, ¶¶12, 14. Plaintiff contends that Stowell died in California as a California resident on August 7, 2018 and inconsistently alleges that she was a California resident for her entire life. FAC, ¶14.[3] While Plaintiff concedes now that Stowell was covered under a group policy, Plaintiff contends that, in or about 1992, her mother Stowell purchased the subject life insurance from J.C. Penney Life Insurance Company ("JCP Life"), which "policy" which was later transitioned and underwritten by TLIC. FAC, ¶¶37, 39, 46. These allegations are inaccurate or at least confusing, as discussed below, since there was no "policy" issued to Stowell, just a certificate of insurance under a group life insurance policy issued to J. C. Penney Company, Inc. ("JCP Company"), which policy owner was located in Illinois. To attempt to fall within the "issued or delivered" trigger requirements set forth in the Statutes, Plaintiff refers to the Certificate and even the Policy having been purchased and "issued or delivered" in California, but that is false. FAC, ¶41.

The value of coverage is "$12,000," and the premium was $16.12 per month," Stowell allegedly paid the premiums for 26 years. FAC, ¶¶38, 43. TLIC allegedly did not provide Stowell with the right to designate another recipient of important policy notices, including a 30-day notice of any effective lapse or the right to a 60-day grace period, and otherwise concealed information from Plaintiff and Stowell. FAC, ¶¶51-55. TLIC allegedly attempted to lapse or terminate coverage in around July 2018. FAC, ¶55. Plaintiff claims neither she nor Stowell have any record of receiving any notices of any missed premium payments in 2018 or any impending lapse. *Id*.

As alleged previously, Stowell died in August 2018, with Plaintiff alleging that the "Policy" had "not been legally and effectively terminated and was in full force." FAC, ¶56.[4] At some later unspecified point in time, Plaintiff submitted a claim to TLIC for the life insurance death benefits, and TLIC denied the claim due to nonpayment of premium. FAC, ¶57. Plaintiff then alleges multiple

---

[3] Documents supplied in the declarations supporting this motion show that Stowell lived in Washington, not California, for some time. For purposes of this motion, these issues are not material.
[4] Due to the more than 60-day grace period provided to Stowell, the coverage was in fact lapsed as of the date of her death, but due to a delay in Plaintiff submitting a claim to TLIC, a mistake was made by TLIC in recognizing this fact. TLIC rectified this mistake and is making full payment of the life insurance death benefits and accrued interest to Plaintiff, as set forth in the attached Declaration of Darlene Edwards ("Edwards Decl."), ¶10.

violations of the Statutes and fraudulent misrepresentations regarding the alleged grace period both prior to and after Stowell's death. FAC, ¶¶58, 60-63.

### C. The Claims for Relief Alleged in This Action

Following the allegations concerning Plaintiff and her decedent mother, the FAC sets forth its class action allegations arising out of the purported failures of TLIC to comply with the Statutes, which became effective January 1, 2013. FAC, ¶¶64-81. Thereafter, the FAC – again based solely on reliance on the purported violation of the Statutes and/or their application – brings claims by Plaintiff and the purported class and sub-class for declaratory relief (two virtually identical but separate claims, one under state law and one under federal law), breach of contract, violation of California Business & Professions Code §§ 17200 *et seq.* and for financial elder abuse. FAC, ¶¶82-126. While TLIC contends that the plain language used by the California Legislature in the Statutes, and under well-established principles of statutory construction, does not apply to policies issued before their January 1, 2013 effective date, TLIC is not challenging at this point whether the Statutes apply to policies issued or delivered in California prior to January 1, 2013. TLIC is only challenging Plaintiff's ability to state a claim with respect to the certificate of insurance issued to her under a group life insurance policy issued and delivered in Illinois to JCP Company as the policy owner.

## III. THERE WAS NO "POLICY" ISSUED TO STOWELL AND THE GROUP POLICY WAS ISSUED AND DELIVERED TO JCP COMPANY OUTSIDE OF CALIFORNIA

The actual facts – established through documents referenced in the FAC and public records of which the Court may take judicial notice – supports TLIC's conclusion that Stowell was covered under a group life insurance policy that was issued and delivered in a state other than California. Thus, Plaintiff – in either capacity asserted in the FAC – does not fall within the Statutes.

In 1991, JCP Company, a Delaware corporation located in Schaumburg, Illinois, applied for a group life insurance policy from JCP Life. JCP Life issued and delivered Group Policy No. 25222 ("Group Policy") to JCP Company in the State of Illinois. JCP Company was identified on the first page of the Group Policy as the "Policyholder." *See* Edwards Decl., ¶3, Ex. 1 (Group Policy including

6

the Application attached thereto); Request for Judicial Notice ("RJN"), Ex. 1.[5] JCP Life was incorporated in Vermont, maintained its home office in Rutland, Vermont, and its administrative offices were located in Plano, Texas. *See* Smith Decl., ¶3.

Under the terms of the Group Policy, at page 2, individuals age 30 to 75 who are credit card holders with JCP Company or their spouses could enroll in the group life insurance coverage by completing an enrollment form and agreeing to a monthly premium charge and be would be issued a Certificate of Insurance evidencing enrollment under the Group Policy and Plan. *See* Edwards Decl., ¶¶3, 4 and Ex. 1; RJN, Ex. 1.

On or about May 7, 1992, Stowell submitted to JCP Life an Enrollment Form for her enrollment as an insured under the Group Policy. The Enrollment Form reflects that the benefits amount is $12,000 with a monthly premium of $16.12. The Enrollment Form further states that it is for enrollment in the Group Whole Life Insurance Plan offered by JCP Life and that the Plan is for "eligible JC Penney cardholders." Edwards Decl., ¶5, Ex. 2; RJN, Ex. 1. A Certificate of Insurance, No. 74LB810725 (the "Certificate"), evidencing enrollment in the Plan was issued to Stowell, effective May 20, 1992. *See* Edwards Decl., ¶5 and Ex. 8; RJN, Ex. 8.

On or about June 13, 1993, Stowell submitted an Enrollment Form for Additional Benefits to JCP Life to obtain $25,000 in accidental death benefits at a cost of $3.25 per month under the Group Policy. *See* Edwards Decl., ¶6, Ex. 3; RJN, Ex. 3. A Group Accidental Death Benefit Rider was added to her Certificate on June 20, 1993. *See* Edwards Decl., ¶6, Ex. 8; RJN, Ex. 8.

Subsequently, on January 25, 2002, JCP Company legally changed its name to its current name of J.C. Penney Corporation, Inc. ("JCP Corp."). *See* Edwards Decl., ¶7, Ex. 4; RJN, Ex. 4. Other than changing the name of the Group Policy Holder to JCP Corp., this name change did not impact

---

[5] As discussed in detail in TLIC's concurrently filed RJN, a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The authenticity of each of the Exhibits attached to the Edwards Declaration and the Declaration of Elizabeth Smith ("Smith Decl.") meet this standard. Further, Judicial Notice of Exhibits 1, 2, 3, 7, 8 and 10 is appropriate under the incorporation by reference doctrine because the Plaintiff refers to the documents in the FAC and they are central to Plaintiff's claim under the Statutes. *Marder v. Lopez*, 450 F. 3d 445, 448 (9th Cir. 2006). Likewise, judicial notice of Exhibits 4-6 and 9 and their contents is proper as documents required to be filed by law with governmental Secretary of State Offices. *See, e.g., Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015).

the Group Policy or the Plan under which Stowell was enrolled. *See* Edwards Decl., ¶7.

On May 7, 2002, JCP Life changed its name to Stonebridge Life Insurance Company ("Stonebridge Life"). *See* Smith Decl., ¶4, Ex. 5; RJN, Ex. 5. Again, there was no change to the Group Policy other than the Plan insurer being renamed and this name change did not impact the Group Policy or the Plan under which Stowell was enrolled. *See* Edwards Decl., ¶8. As with JCP Life, Stonebridge Life was incorporated in Vermont with its administrative offices located in Plano, Texas. *See* Smith Decl., ¶4.

On October 1, 2015, Stonebridge Life legally merged into TLIC. *See* Smith Decl., ¶5, Ex. 6; RJN, Ex. 6. A Merger Endorsement for the Certificate that was sent to Stowell on January 5, 2016. *See* Edwards Decl., ¶9, Ex. 7; RJN, Ex. 7. Again, there was no change to the Group Policy as a result of the merger other than the Plan insurer being renamed, and this name change did not otherwise impact the Group Policy or the Plan under which Stowell was enrolled. *See* Edwards Decl., ¶9. The Group Certificate in effect and issued to Stowell was provided to her, and at all times that coverage was in effect, Stowell was insured under Group Policy No. 25222 and enrolled in the Group Plan and that did not change despite various corporate name changes. *See id.*, ¶9, Ex. 8; RJN, Ex. 8. TLIC is and at all times was incorporated in Iowa with its principal place of business located in Cedar Rapids, Iowa. *See* Smith Decl., ¶6, Exs. 6, 9; RJN, Exs. 6, 9.

Stowell allegedly died on August 7, 2018. FAC, ¶56. The coverage under the Certificate issued to Stowell had been paid through June 19, 2018. *See* Edwards Decl., ¶10. Despite the Grace Period stated in the Certificate being 31 days, it was TLIC's practice to provide enrollees with a 60 day grace period for this particular Plan/Group Policy. *See id*. A Billing Summary Statement dated July 25, 2018 reflected the extended ability to pay the premiums to maintain the Certificate. *See* Edwards Decl., ¶10, Ex. 10; RJN, Ex. 10. Thus, the Certificate issued to Stowell was still in effect (given the extended grace period) at the time of her death. Due to, among other things, Plaintiff's delay in submission of the claim for benefits (claim submitted in December 2018 well after the August 2018 initial phone notice that Stowell had allegedly died), TLIC's system showed the Certificate in a lapsed status when Plaintiff claim documents finally were received, and TLIC mistakenly denied the claim. When TLIC discovered this mistake while reviewing its records in connection with this

1    lawsuit, TLIC promptly notified Plaintiff's counsel and is paying the claim. *See* Edwards Decl., ¶10.

2 **IV.**    **LEGAL STANDARD FOR MOTIONS TO DISMISS**

3      In deciding a motion to dismiss under Rule 12(b)(6), the court need not accept as true

4 allegations contradicted by an exhibit to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d

5 979, 988 (9th Cir. 2001). Documents referenced in a complaint may be considered on a motion to

6 dismiss, even if not attached, if they are "central" to the claims. *Marder v. Lopez*, 450 F. 3d 445, 448

7 (9th Cir. 2006). The Court need not accept allegations that contradict exhibits attached to the

8 complaint or central to it. *Daniel-Hall v. Nat'l Educ. Assn.*, 629 F. 3d 992, 998 (9th Cir. 2010). The

9 court may also consider matters subject to judicial notice. *Reese v. Malone*, 747 F.3d 557, 568-69

10 (9th Cir. 2014). Dismissal is proper where there is either a lack of a cognizable legal theory or the

11 absence of sufficient facts alleged under a cognizable legal claim. *Hinds Invs., L.P. v. Angioli*, 654

12 F.3d 846, 850 (9th Cir. 2011).

13 **V.**    **THE STATUTES DO NOT APPLY TO THE GROUP LIFE INSURANCE POLICY**

14        **BECAUSE IT WAS ISSUED AND DELIVERED OUTSIDE OF CALIFORNIA**

15      Group life insurance is life insurance that is purchased under a single contract issued to an

16 entity covering a group of people – in the case here, JCP Company credit cardholders. *See, e.g.,*

17 *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1246-47, 1251 (C.D. Cal. 2003); Edwards

18 Decl., ¶3, Ex. 1 (Provisions-Eligibility); RJN, Ex. 1. The policy owner is issued a group life policy

19 and it covers eligible members of the group who enroll. *Id.* (here, JCP Company was the policy owner

20 who was issued the Group Policy). Each person who enrolls in turn received a Certificate of

21 Insurance. *See* Edwards Decl., ¶3, Ex. 1 (at p. 1 of Group Policy and p. 2 "When a Person Becomes

22 an Insured"); RJN, Ex. 1; *Heighley,* 257 F. Supp. 2d at 1246-47. In contrast to individual policies,

23 completion of a simple enrollment form guarantees enrollment of eligible persons. *Id.* The Certificate

24 of Insurance at issue in this case states that the insured member of the group is covered under the

25 Group Policy held by JCP Corp. *See* Edwards Decl., Ex. 8 (at p. 1 of Certificate); RJN, Ex. 8; FAC,

26 Ex. B. The Certificate of Insurance serves as proof of insurance, ***but it is not the actual insurance***

27 ***policy***. *Id.* at p. 3 ("Entire Contract").

28      Plaintiff's FAC is premised on her claim that TLIC allegedly violated the Statutes by failing

9

to provide a 60-day grace period, a 30-day notice of pending lapse and an annual right to designate a third party to receive notice of lapse. She seeks to certify a class of **owners** as well as **certificate holders** or **individuals with an interest in the policy** or beneficiaries of TLIC life insurance policies in force on or after January 1, 2013 and governed by the Statutes where TLIC did not allegedly comply with the Statutes prior to lapse, termination or reinstatement. FAC, ¶69. TLIC contends that the Statutes apply only as to certain policies issued or delivered in California on or after January 1, 2013 (the effective date of the Statutes). Resolving that issue, which is now being addressed by numerous other courts, is not, however, the one presented by this motion.[6]

But even if the Statutes applied to life insurance policies issued or delivered prior to January 1, 2013 (as Plaintiff alleges), the Statutes only apply to policies "issued or delivered" **in California**. FAC, ¶29. Here, the Group Policy was issued and delivered to the policy owner (JCP Company) in Illinois. *See* Edwards Decl., ¶3, Ex. 1; RJN, Ex. 1. Further, the plain and clear language of Section 10113.71's lapse notice requirements apply only in the context of group insurance with respect to notice to the named **policy owner** (not the insured, not a certificate holder and not a person with an interest). Moreover, the plain and clear language of Section 10113.72 applies **exclusively** to individual life insurance policies and thus is totally inapplicable to group policies. Plaintiff's FAC offers no basis to extend the mandates of the Statutes to group policies. Such an extension would be inconsistent

---

[6] TLIC's position that the Statutes do not apply to life insurance policies issued and delivered prior to January 1, 2013 is supported not only by the statutory language but also by several recent decisions. *See, e.g., McHugh v. Protective Life Insurance Company,* 40 Cal. App. 5th 1166, 1177 (2019), presently pending on appeal before the California Supreme Court, Case No. S259215 (finding that McHugh's life insurance policy is governed by the regulations in effect when it was issued in 2005, and the subsequently enacted sections 10113.71 and 10113.72 are not incorporated into the policy), and *Shaff v. Farmers New World Life Insurance Company,* Central District of California, Case No. 17-CV-03610 JAK, appealed to and pending in the Ninth Circuit, No. 19-56129 (District Court held that the Statutes are not retroactive and did not apply to the policy issued pre-January 1, 2013). While other cases have similarly concluded that the Statutes are not retroactive, they have applied a so-called "renewal principle" to the Statutes to force policies issued prior to January 1, 2013 to comply with the obligations set forth in the Statutes – despite the statutory language demonstrating no retroactive intent and clearly no mention of this so-called "renewal principle" or even the word "renewal" in the Statutes. These cases are also on appeal. *See Bentley v. United of Omaha Life Insurance Company,* Central District of California, Case No. 2:15-cv-07870-DMG-AJW, Ninth Circuit, No. 20-55435; followed by *Thomas v. State Farm Ins. Co.,* Southern District of California, Case No. 18-CV-0728 BAS BGS, Ninth Circuit, No. 20-55231. TLIC contends that both *Bentley* and *Thomas* are wrongly decided. As discussed herein, the Court need not decide this issue here because, unlike the individual policies issued in California in those cases, the Statutes cannot apply here because this case involves a group policy issued and delivered in Illinois.

with sound public policy by imposing undue costs and burdens on non-California group plans.

Additionally, the Statutes' lack of any use of the term "certificate" as issued to an insured under a group life insurance policy only further demonstrates that the Statutes are not meant to apply to certificate holders under such a group policy, but rather only to the group policyholder as discussed above. That is the manner in which the Statutes should be interpreted. *See Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1496 (2005) ("We presume the Legislature meant what it said and the plain meaning of the statute governs."). In fact, the California Insurance Code is replete with statutes that distinguish between certificates of insurance, on the one hand, and the group policyholder, on the other hand. *See, e.g.*, California Insurance Code, §§786, 10209.1, 10113.4, 10112.5. For example, in section 786, involving the sale of disability and life insurance to seniors, commences as follows:

> "All individual and group disability insurance policies and certificates, and all **group life insurance policies and certificates** offered for sale to individuals age 65 or older in California shall provide an examination period of 30 days after the receipt of the **policy or certificate** for purposes of review of the contract. If the **policyholder or certificate holder** chooses to cancel the **policy or certificate** and returns the **policy or certificate** for cancellation, by mail or other delivery method, within the 30-day examination period, the return shall void the **policy or certificate** from the beginning, and the parties shall be in the same position as if a **policy or certificate** had not been issued. All premiums paid and any policy or membership fee paid shall be fully refunded to the **policyholder or certificate holder** by the insurer or entity in a timely manner." (Emphasis added.)

As can be seen by the bolded text, Section 786 repeatedly distinguishes between policies and certificates and between policyholders and certificate holders. The Statutes in the present case do not discuss certificates or certificate holders, and their provisions only apply to individual policies, with the sole portion that applies to group policies only referencing "[e]ach life insurance policy," not any certificate, and then only life insurance policies issued in the State of California.

Plaintiff's Breach of Contract, Unfair Competition and Elder Abuse claims, which all rely upon the application of and TLIC's purported violation of the Statutes, necessarily fail as a matter of law. Additionally, Plaintiff's twin Declaratory Relief claims similarly are based on the Statutes and the claims set forth above. Thus, they too fail as well.

## VI.  THE LEGISLATIVE HISTORY OF THE STATUTES FURTHER CONFIRMS THEIR INAPPLICABILITY TO THE GROUP LIFE POLICY

As addressed above, with two exceptions, the Statutes only apply to individual policies, not

11

group policies. First, the 60-day grace period is applicable to group life insurance policies under Section 10113.71(a), based on the language in Section 10113.71(c) that a life insurance policy for this section includes "a group life insurance policy, except where otherwise provided." Of course, that language is couched in the context of life insurance policies "issued or delivered in this state," not a policy issued in Illinois. Second, Section 10113.71(b), concerning the 30-day notice of pending lapse, explicitly references such notice going to the ***policy owner*** or a designee or person with an interest "for an individual life insurance policy," and that provision cannot apply to a person like Plaintiff seeking benefits under a certificate of insurance issued under a group life insurance policy

The legislative history, which TLIC supplies with this motion, further demonstrates that there is no obligation to provide any 30-day lapse notice with respect to certificate holders under group policies.[7] Under the legislative history, Section 10113.71(b), prior to its amendment on June 19, 2012, stated as follows:

> (b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named insured, a designee named pursuant to Section 10113.72, and a known assignee or other person having an interest in the policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

> * * *

> (3) Notice shall be given to the insured and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with consent of the assignee. LH 016.

However, on June 19, 2012, the Legislature amended that section to replace "named insured" (in subsection (1)) and "insured" (in subsection (3)) with "policy owner":

> (b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the ~~named insured~~ *policy owner*, a designee named pursuant to Section 10113.72, and a known assignee or other person having an interest in the policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

> (3) Notice shall be given to the ~~insured~~ *policy owner* and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. (Emphasis and stricken text by Legislature.) LH 020

By doing so, the Legislature deleted any potential argument that a named insured (or an insured) was

---

[7] A true copy of the Statutes' legislative history is attached to the accompanying Declaration of Heather Thomas. TLIC asks that the Court take judicial notice of the legislative history. The pages referenced below refer to the Bates numbered pages in the Thomas declaration, denoted "LH___."

entitled to such notice, as opposed to the **policy owner**, and in the case of a group life insurance policy, the policy owner is not the certificate holder.

Then, in the final amendment to the Statutes, made August 14, 2012, the Legislature emphasized that the 30-day notice for designees identified pursuant to Section 10113.72 only applied to **individual** policies, and not group policies:

> (b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 *for an individual life insurance policy*, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium. (Emphasis by Legislature.) LH 024.

Both the Senate and Assembly confirmed in reports subsequently made part of the legislative history that the August 14, 2002 amendment **removed group life policies from the ambit of section 10113.72**, such that the provision only applied to individual life insurance policies:

> Senate Floor Amendments of 8/14/12 clarify that the requirement that the insurer send a notice of pending lapse and termination of a life insurance policy for nonpayment of premium *applies to individual, and not group, life insurance policies*. [Senate Rules Committee, August 15, 2012] (Emphasis added.) LH 122

> 2) Requires insurers to mail a notice of pending lapse and termination at least 30 days prior to the termination *of an individual life insurance policy* for nonpayment of premium. [Assembly Concurrence in Senate Amendments] (Emphasis added.) LH 162.

Accordingly, to the extent there were any doubt from a plain reading of the Statutes that they only apply to individual policies, the legislative history only drives home this point. The sole remnant of the Statutes applying to group policies after the final amendment before the Statutes were passed by the Legislature is the 60-day grace period, but again that only applies to group policies issued or delivered in California, unlike the group policy issued to JCP Company in Illinois and under which Plaintiff alleges her claims.

## VII.  PLAINTIFF'S RESORT TO INAPPLICABLE INSURANCE CODE PROVISIONS AND ARGUMENTS DIVORCED FROM THE PLAIN LANGUAGE OF THE STATUTES CANNOT ELEVATE A CERTIFICATE OF INSURANCE TO AN INDIVIDUAL OR GROUP POLICY

As discussed above, once TLIC moved to dismiss the original complaint – which failed to

acknowledge that Plaintiff's claim was based upon a certificate of insurance issued under a group policy – Plaintiff chose not to even oppose the motion, but "reworked" her pleading to allege a convoluted mess of allegations seeking to equate the well-known insurance concept of a certificate of insurance with equally established concepts of individual and group life insurance policies. Not only is the argument virtually nonsensical, but it strains beyond all reason the plain language of the Statutes, which only apply to individual life insurance policies and, in one instance, group life insurance policies, but only with respect to *the owner* of such a policy, not any certificate holder. Not one of the panoply of Insurance Code sections tossed into the FAC have any relevancy whatsoever to the interpretation of the Statutes. They should be ignored and this motion granted.

For example, Plaintiff references Insurance Code §§ 41 and 42 (FAC, ¶¶4, 19),[8] which are mere introductory provisions of the Code, but neither define what a "group policy" is or state that a certificate issued under a group policy has the same meaning as a group policy, let alone an individual policy. Even more nonsensical is Plaintiff's citation to section 106 (FAC, ¶38), which is the definition of disability insurance, a concept completely immaterial to the life insurance at issue in this case, the definition of which is found in section 101, which is not even cited by Plaintiff.[9]

Continuing to ignore the plain language of the Statutes – which say not one word about certificates of insurance – Plaintiff moves to a separate chapter of the Code dealing with group life policies, §§ 10200, *et seq*. (FAC, ¶¶41, 42). To the extent these sections address "certificates of insurance," *e.g.*, section 10209, there is nothing whatsoever in them that seeks to equate a certificate with a group life insurance policy. Even more strained is the resort to section 10209.1, which states that an individual certificate is to be "individualized," which merely means that it has to have "the name of the employee or some other means of identifying to the employee covered that it is his individual certificate." Again, this is completely irrelevant to the Statutes, let alone the express

---

[8] Section 41: "All insurance in this State is governed by the provisions of this code." Section 42: "The designation of insurance coverage as 'group' in any code or law of this state other than this code does not authorize its representation as a group coverage or as a group policy, certificate, or contract by any person licensed or certificated by the commissioner unless the policy providing the coverage is defined as group insurance by a specific provision of this code or of the laws of the state in which the policy, certificate, or contract is issued."

[9] Plaintiff references section 106 in connection with the additional accidental benefit coverage under the group life insurance policy, but there is no allegation Ms. Stowell died due to any accident.

14

language of section 10113.71 that only applies to individual or group **policies** issued or delivered in California, not certificates issued or delivered in California.[10]

Finally, citing section 10209.3, which allows a person insured under a group life insurance policy to assign ownership rights to another person (assuming there were to be in agreement among the insured, insurer and policyholder), Plaintiff urges that Stowell possessed ownership rights that, again in a completely unsupported and convoluted fashion, somehow bring her certificate within the scope of the Statutes. (FAC, ¶42.) Not only is there no allegation that any such agreement or assignment was made, but this section, like all the other sections cited by Plaintiff, says nothing about providing a certificate holder with any ownership interest **in the group policy**. And it cannot be emphasized enough that the Statutes do not refer to certificates of insurance, and the group policy still needs to be issued and or delivered in California.

At bottom, no matter how many Insurance Code provisions are thrown out to see what will stick, the only relevant statutes, sections 10113.71 and 10113.72, do not apply here because the group policy was not issued or delivered in California, and the only portion of the Statutes that even cover group policies are not directed to certificate holders, but solely to the group policy owner.

Plaintiff's new misrepresentation theory which she seeks to support some of her claims, is likewise fundamentally flawed because, among other things, it is dependent on the Statutes and is also contradicted by the notices sent to Stowell that provided more than a 60-day period to pay.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, TLIC respectfully requests that the Court with prejudice the FAC.

DATED:    June 19, 2020                HINSHAW & CULBERTSON LLP

By: /s/ *Vivian I. Orlando*
Larry M. Golub
Vivian I. Orlando
Attorneys for Defendant TRANSAMERICA
LIFE INSURANCE COMPANY

---

[10] One of the provisions cited by plaintiff, section 10205, in discussing the filing of group policy forms, expressly distinguishes between the group policy itself and certificates of insurance issued thereunder. In a formal opinion issued by the California Attorney General, 1964 Cal. AG LEXIS 19, *9, 44 Ops. Cal. Atty. Gen. 55, 58, the Attorney General concluded that the "delivery of the certificate to borrowers in California does not mean that the policy, or any part thereof, was issued or delivered in California in violation of California Insurance Code section 10205."