| | |
|---|---|
| 1 | **NICHOLAS & TOMASEVIC, LLP** |
| | Craig M. Nicholas (SBN 178444) |
| 2 | Alex Tomasevic (SBN 245598) |
| | 225 Broadway, 19th Floor |
| 3 | San Diego, California 92101 |
| | Tel: (619) 325-0492 |
| 4 | Fax: (619) 325-0496 |
| | Email: cnicholas@nicholaslaw.org |
| 5 | Email: atomasevic@nicholaslaw.org |
| 6 | **WINTERS & ASSOCIATES** |
| | Jack B. Winters, Jr. (SBN 82998) |
| 7 | Georg M. Capielo (SBN 245491) |
| | Sarah Ball (SBN 292337) |
| 8 | 8489 La Mesa Boulevard |
| | La Mesa, California 91942 |
| 9 | Tel: (619) 234-9000 |
| | Fax: (619) 750-0413 |
| 10 | Email: jackbwinters@earthlink.net |
| | Email: gcapielo@einsurelaw.com |
| 11 | Email: sball@einsurelaw.com |
| 12 | Attorneys for Plaintiff SHERYL CLARK, |
| | and on Behalf of the Class |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERYL CLARK, Individually, as Successor-in-Interest to Delaine Stowell, on Behalf of the Estate of Delaine Stowell, and on Behalf of the Class,<br><br>Plaintiff,<br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation<br><br>Defendant. | Case No.: 2:20-cv-00539-JAM-DB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**Hearing Date**: August 11, 2020<br>**Hearing Time**: 1:30 p.m.<br>**Courtroom**: 6<br><br>**Judge**: Hon. John A. Melendez<br>**Magistrate**: Hon. Deborah Barnes<br><br>**Action Filed**: March 10, 2020 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | **1** |
| **II.** | **RELEVANT BACKGROUND** | **2** |
| | A. The Statutes and Their Important Purpose | 2 |
| | B. The Policy and the Purported Termination | 2 |
| **III.** | **ARGUMENT: THE STATUTES APPLY** | **4** |
| | A. Plain Language Confirms the Statutes Apply to All Policies in Effect in 2013 | 5 |
| | B. Conflict of Laws Principles Also Support Application of The Statutes | 8 |
| | C. California's Renewal Principles Also Require Application Of the Statutes to this Policy | 11 |
| | D. Defendant's Argument that This is a "Group" Policy is Erroneous. | 13 |
| **IV.** | **CONCLUSION** | **15** |

# TABLE OF AUTHORITIES

**CASES**

*20th Century Insurance Co. v. Garamendi*,
  8 Cal.4th 216 (1994)..................................................................................................4

*Abogados v. AT&T,*
  223 F. 3d 932 (9th Cir. 2000)......................................................................................8

*BellCare Nurses Registry Inc. v. Continental Casualty Company*,
  25 So. 3d 13 (Fl. Dist. Ct. App. 2009) ......................................................................11

*Cal Farms Ins. Cos. v. Fireman's Fund Am. Ins. Co.*,
  25 Cal.App.3d 1063 (1972).........................................................................................5

*California Casualty Indemnity Exchange v. Pettis,*
  193 Cal.App.3d 1597 (1987).......................................................................................9

*Carpenter v. P. Mut. Life Ins. Co. of Cal.*,
  10 Cal. 2d 307 (1937).................................................................................................4

*Cerone v. Reliance Std. Life Ins. Co.*,
  9 F. Supp. 3d 1145 (S.D. Cal. 2014) ........................................................................11

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001).......................................................................................8

*Frank v. Certain Underwriters at Lloyds London Syndicate 4141*,
  CV-10-00381-PHX-NVW, 2011 WL 1770536 (D. Ariz. May 10, 2011) ..........................6, 7

*Klotz v. Old Line Life Ins. Co. of Am.*,
  955 F. Supp. 1183 (N.D. Cal. 1996)..........................................................................11

*Larson v. State Personnel Bd.*,
  28 Cal.App.4th 265 (1994).........................................................................................5

*Modglin v. State Farm Mut. Auto. Ins. Co.*,
  273 Cal. App. 2d 693 (1969).....................................................................................11

*Palmquist v. Stand. Acc. Ins. Co.*,
  3 F. Supp. 356 (S.D. Cal. 1933) ...............................................................................10

*Pitzer College v. Indian Harbor Ins. Co.*,
  8 Cal. 5th 93 (2019)..................................................................................................10

*Roesgen v. American Home Products Corp.*,
  719 F. 2d 319 (9th Cir. 1983)......................................................................................8

*Stephan v. Unum Life Ins. Co. of Am.*,
  697 F.3d 917 (9th Cir. 2012).....................................................................................11

*Strassberg v. New England Mut. Life Ins. Co.,*
  575 F.2d 1262 (9th Cir. 1978)................................................................................8, 9

| | |
|---|---|
| 1 | *Thomas v. State Farm Ins. Co.*, |
| | 424 F. Supp. 3d 1018 (S.D. Cal. 2019) ...................................................................11, 12 |

**STATUTES**

15 U.S.C. § 1011 ........................................................................................................................4

15 U.S.C. § 1012 ........................................................................................................................4

215 ILCS 5/224 ..........................................................................................................................8

215 ILCS 5/230.1 ......................................................................................................................15

Cal. Ins. Code, § 10102 ............................................................................................................14

Cal. Ins. Code, § 10113.1 ...........................................................................................................8

Cal. Ins. Code, § 10113.6 ......................................................................................................6, 7

Cal. Ins. Code, § 10113.71 ..........................................................................................1, 2, 5, 13

Cal. Ins. Code, § 10113.72 ..........................................................................................1, 2, 5, 13

Cal. Ins. Code, § 10117.71(a) .....................................................................................................7

Cal. Ins. Code, § 10201 ............................................................................................................14

Cal. Ins. Code, § 10202 ............................................................................................................14

Cal. Ins. Code, § 10203 ............................................................................................................14

Cal. Ins. Code, § 10204.5 ...................................................................................................14, 15

Cal. Ins. Code, § 10509.953(o) ..................................................................................................8

Cal. Ins. Code, § 41 ..............................................................................................................2, 4

**OTHER AUTHORITIES**

1A *Couch on Insurance* (3d ed. 1995) ......................................................................................6

Cal. Jur. 3d Insurance Contracts ..............................................................................................14

**RULES**

Fed. R. Civ. Proc., Rule 15(a) ..................................................................................................15

## I. INTRODUCTION

The Legislature adopted Insurance Code Sections 10113.71 and 10113.72 (the "Statutes") to address potential loss of critical life insurance coverage, especially for vulnerable seniors and the disabled. The Legislature was concerned with people losing "the critical protection of life insurance if a single premium is accidentally missed (even if they had been paying premiums on time for many years.)." Thus, lawmakers amended the Insurance Code to introduce safeguards and strict requirements before any insurer providing coverage "in" California could legally terminate a life insurance policy because of non-payment of a premium.

Here, Defendant does not seriously dispute that it failed to comply with all the Statutes' requirements before terminating Plaintiff's policy. Its main argument, rather, is that the Statutes do not apply. Defendant is wrong.

First, the Statutes apply according to their plain terms. For example, protections apply to all policies "delivered" in California, regardless of where they were originally issued. This policy was clearly delivered to a California citizen, Ms. Delaine Stowell, in California.

Second, choice of law principals demand application of California, not Illinois, law. This insurance contract was entered into in California, repeatedly paid for from California by a California citizen, insured risk located in California (the insured's life), and was meant to provide benefits to beneficiaries (i.e. Plaintiff) living in California at all relevant times including today. In comparison, Illinois has very little interest or connection with this matter.

Third, and again separately, the policy renewed several times in California after it was originally issued, thereby incorporating changes in California law automatically at each renewal.

Finally, Defendant's argument that certain of The Statutes' provisions do not apply to its "group" policy also fails. Quite simply, Defendant has not shown on this record, and cannot show on any record, that there are any legitimate group policies at issue here – as the law defines that term. Rather, JC Penney issued itself and all its credit card holders who paid an individual premium a policy and slapped the "group" label on it. But that does not make it so in California, or even under Illinois law, which Defendant argues so strenuously for. In short, Plaintiff has indeed stated a claim based on The Statutes. Defendant's motion should be denied in full.

## II. RELEVANT BACKGROUND

### A. The Statutes and Their Important Purpose

The Statutes apply to every life insurance policy "in" California. *See* Cal. Ins. Code § 10113.71-.72; Cal. Ins. Code § 41. Relevantly, The Statutes require that life insurers: (1) provide a 60-day grace period from the premium due date (10113.71(a)); (2) provide policyholders and their designees 30 days written notice "of pending lapse and termination" prior to the effective termination date (10113.71(b)(1)); and (3) give their policyholders notice of an opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium (10113.72).

The Statutes are written broadly and strongly in terms of their coverage. For example, Section 10113.71 starts by saying that, for the 60-day grace period requirement, it applies to "each" life insurance policy issued "*or* delivered" in California, and that its protections "shall" apply to each such policy. § 10113.71(a) (emphasis added). Sub-paragraph (b) adds a separate written lapse notice requirement and does not talk about issuance or delivery. Rather, it covers every insurance policy without limitation. And sub-paragraph (c) makes it clear that a life insurance "policy," as referenced in that Section, broadly refers to individual *and* group policies.

Finally, these Statutes serve a vital public purpose:

> [T]he bill provides consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit. Under existing law, individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed (even if they have been paying premiums on time for many years) . . . Therefore, the protections provided by AB 1747 are intended to make sure policyholders have sufficient warning that their premium may lapse due to nonpayment.

Request for Judicial Notice ("RJN"), Ex. 1, p. 34 Assembly Committee on Insurance, AB 1747 (Feuer). The result of an insurer's failure to strictly comply with these important consumer safeguards is simple: attempted termination of the policy is ineffective. *See, e.g.,* § 10113.71 (b)(1) (lapse and termination "shall not be effective unless [notice is] mailed…").

### B. The Policy and the Purported Termination

In about 1992, Delaine Stowell, a resident of California, purchased life insurance from JCPenney Life Insurance Company. FAC, ¶ 37. The solicitation of that coverage was made in

California and was undertaken by JC Penney Company Inc. and JC Penney Life Insurance Company, then licensed to be involved in the business of insurance in California. *Id.*

The coverage which Ms. Stowell obtained was sometimes referred to as "POLICY NUMBER; 74LB810725" and other times was referred to as "Policy/Certificate Number: 74LB810725." *Id.* at ¶ 39. Whatever the tile, the certificate and/or policy was in fact delivered in the state of California. *Id.* at ¶¶ 14, 49.

For years, Ms. Stowell paid for her insurance coverage from California through automatic payments on her JC Penney Credit Card. *Id.* at ¶¶ 43, 50. She paid over $6,000 over a period of more than 26 years. *Id.* at ¶ 43. Such payments were considered an annual renewal of coverage pursuant to the terms of the original agreement and all payments were characterized as "renewal premiums." *Id.*

Sometime prior to January 5, 2016, JC Penney sold, merged or in some fashion transferred its obligations under the policy to Stonebridge Life Insurance Company. *Id.* at ¶ 44. Then, in 2016, Stonebridge advised Ms. Stowell that it would no longer be the underwriter for her insurance coverage and that the contract would be amended and changed through an Endorsement altering the relationship between the parties and transitioning Ms. Stowell's coverage to Transamerica, the current defendant. *Id.* at ¶¶ 45-46.

After this switch, Defendant provided Ms. Stowell a new and different "Certificate of Insurance" naming Transamerica as the underwriter of the policy and specifically voiding all prior Certificates. This Group Policy was materially different than previous versions of Group Policies which may have been issued or delivered through J.C. Penney Corporations, Inc., such as the original policy issued in 1992. *Id.* at ¶ 47.

From her original purchase, Ms. Stowell stayed current on the Policy and faithfully paid the premiums every month for almost 30 years, and well beyond the enacting of The Statutes in 2013. But one payment was apparently missed in or around June of 2018 – perhaps related to Ms. Stowell's illness and incapacitation. Defendant lapsed or terminated coverage in or around July of 2018. *Id.* at ¶ 55.

Ms. Stowell died on August 7, 2018. Importantly, her premium payment due date was June 20, 2018. This means that Ms. Stowell died well within the required 60-day grace period for individual *and* group policies, which would have only expired on August 19, 2020. *Id.* at ¶ 56.

In short, at no point relevant to this matter has Defendant, in any fashion, complied with or attempted to comply with The Statutes. *Id.* at ¶ 61. Therefore, as Plaintiff ultimately alleges, the termination of the Policy was void and the Policy remained in force through the insured's death. In turn, benefits are owed under the terms of the policy as well as under California law.

## III. ARGUMENT: THE STATUTES APPLY

The Statutes apply to Plaintiff's policy based on basic statutory interpretation and the strong public policy of this State to avoid forfeitures and protect seniors and the disabled. Renewal principles also support application of the Statutes.

As a threshold matter, insurance is traditionally, and appropriately, one of the most heavily regulated industries by states because of its capacity to affect a state's consumers so greatly. Therefore, it should surprise no one that California can, and often does, force changes in existing insurance relationships when it sees fit. Indeed, California's stated policy starts with a broad pronouncement at the outset of its Insurance Code: "*All* insurance *in* this State is governed by the provisions of this code." Cal. Ins. Code, § 41 (emphasis added). Moreover, the California Supreme Court has repeatedly confirmed that applicable changes to that Insurance Code are "read into" and applied to policies as a proper exercise of California's police power regardless of what those policies said beforehand. *20th Century Insurance Co. v. Garamendi*, 8 Cal.4th 216, 240 (1994).[1]

To be sure, it cannot be disputed that protecting consumers – primarily the sick and elderly – from losing insurance coverage due to a single missed premium payment is a legitimate public objective in California and elsewhere. See e.g. *Carpenter v. P. Mut. Life Ins. Co. of Cal.*, 10 Cal. 2d 307, 329 (1937) ("It is no longer open to question that the business of insurance is affected with

---

[1] Even federal law expressly recognizes the individual States' rights to regulate insurers in this way, and that it is in their citizens' interest to allow such regulation. 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest…"); § 1012 (b) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance…").

a public interest."). Consequently, the protections guaranteed by The Statutes, although not in the language of Plaintiff's policy when it was originally issued, were incorporated into her policy by law along with all "in force" policies at the time. See *Cal Farms Ins. Cos. v. Fireman's Fund Am. Ins. Co.*, 25 Cal.App.3d 1063, 1071 (1972) where "there was a conflict between the policy provision and the statute, [] the effect of our holding is to automatically amend the policy provision to conform to the requirements of the statute"). Defendant's interpretations conflict with this fundamental feature of insurance regulation in California.

### A. Plain Language Confirms the Statutes Apply to All Policies in Effect in 2013

Defendant also ignores the plain and broad language of The Statutes. The operative language of section 10113.71 concerning the application of its 60-day grace period is found in its inclusive first word "each," and in its mandatory directive "shall:" "*Each* life insurance policy issued or delivered in this state *shall* contain a provision for a grace period of not less than 60 days from the premium due date." § 10113.71(a) (emphasis added). Explicitly, "each" means every policy in California, and "shall" is a self-evident mandatory directive. *See Larson v. State Personnel Bd.* 28 Cal.App.4th 265, 276 (1994) ("The ordinary meaning of 'shall'. . . is of mandatory effect, while the ordinary meaning of 'may' is purely permissive in character."). The same is true of Section 10113.71(b)(1) (notice of pending lapse and termination "shall not be effective" unless 30-days prior notice is provided). Similarly, the language of section 10113.7**2** says that insurers "shall" notify policyholders of the right to designate, and at subsection (c), that no policy "shall" lapse or be lapsed without 30-days prior written notice. Cal. Ins. Code § 10113.71 (b) & (c).

Defendant's interpretation relies on a strained reading of the phrase "issued or delivered." As a threshold matter, that language does not appear in all clauses. Sections 10113.72(b) and (c), for example, have no such reference. The Statutes contain several *independent* obligations that bind insurers irrespective of when their policies were originally issued or delivered, and they should each be analyzed separately. Defendant fails to do so.

Nonetheless, the Legislature's use of the phrase "issued or delivered" in those clauses makes Plaintiff's case, not Defendant's. As alleged in the FAC, the certificate and/or the policy were

issued and delivered to the insured (Ms. Stowell - Plaintiff's mother) <u>in California</u> – thus triggering the Statutes. FAC, ¶¶ 14, 23. The Court can stop there.

To be sure, "delivery" means the act of giving control of the policy to the insured – often by handing over physical possession of it - sometimes for purposes of establishing the effective date of the coverage. *Frank v. Certain Underwriters at Lloyds London Syndicate 4141*, CV-10-00381-PHX-NVW, 2011 WL 1770536, at *6 (D. Ariz. May 10, 2011); citing 1A *Couch on Insurance* § 14:6 n.1 (3d ed. 1995). While The Statutes themselves do not specifically define the phrase "issued or delivered," elsewhere the Insurance Code equates delivery of life insurance with physically providing a copy of the policy terms sufficient to trigger the start of the period during which the coverage can be returned or cancelled for no cost. Cal. Ins. § 10113.6. Defendants themselves claim they did that – i.e. delivered insurance terms to the insured and started the cancellation window– at least twice: once when delivering the terms to Ms. Stowell in California in 1992, and, separately, in 2016. Defendant's own documents seem to confirm this. *See* Defense Exh. 1, TLIC 000002 (noting that delivery of the Certificate of Insurance to the insured triggered the 90-day cancellation window under this policy); FAC Ex. B (ECF 19-2) at TLIC 000016 (same, but as delivered this time by Transamerica in 2016); FAC ¶¶ 46, 47.

Both times, the terms were delivered to Ms. Stowell in California – first when she was living in Escondido, and next when she was living in San Marcos. Def. Ex. 2 at TLIC 000008 (address in Escondido, CA); FAC Ex. B.at TLOC 000016 (living in San Marcos, CA); FAC ¶ 14 (confirming that Ms. Stowell was living in California at all relevant times, including when the policy terms and certificate were delivered to her there). In short, the policy terms, including the Certificate, were repeatedly delivered to Ms. Stowell *in California* thus falling within the plain trigger of Section 10113.71(a).

Worried about this obvious California connection, Defendant must redefine the "issuance" or "delivery" as meaning only the one day when JC Penney first designated itself as a life insurance policy holder for the benefit of its cardholders many years ago and simultaneously issued and delivered the policy to itself, allegedly, in Illinois. First, Defendant's purported facts contradict the

allegations of the complaint and the latter must be taken as true. The policy was issued and delivered in California. FAC, ¶ 41 ("all policy/certificates of insurance dealing with Ms. Stowell's coverage were delivered to or in the State of California."). In fact, even Defendant's own extraneous evidence lobbed in with its motion contradicts its claim that the policy was issued in Illinois. Defense Ex. 8 (defendants' records say, rather: "STATE OF ISSUE: WASHINGTON STATE").

Moreover, Defendant conflates the concepts of "issuance" and "delivery," treating them as one in the same. But they are separate events. In the end, it does not matter if the policy terms were issued in Illinois, Washington, or any other place if they were then delivered to the insured in California, as happened here. *See* § 10117.71(a) (using the disjunctive and applying the 60-day grace period to policies "issued *or* delivered" in California) (emphasis added).

Also, Defendant's interpretation is inconsistent with the better and more logical interpretation of "delivery" which contemplates a physical delivery to an insured to trigger coverage or a free cancellation window. *Cf. Frank,* 2011 WL 1770536; Cal. Ins. 10113.6. Indeed, the policy at issue makes the delivery of the certificate to the insured the important event starting the window for free cancellation and full premium refund, just like the California Insurance Code does in Section 10113.6 when it discusses "delivery." *See* Defense Exh. 1, TLIC 000002 (cancellation or return window triggered by delivery of the certificate to Ms. Stowell in California, not the earlier issuance or delivery to JC Penney); FAC Ex. B (ECF 19-2) at TLIC 000016 (same, but as delivered this time by Transamerica in 2016). In other words, the policy itself says that delivery of the certificate to the insured is the same as delivering the policy.

Finally, Defendant proffers a distinction without a difference. Here, there is no difference between the applicable "Certificate" and the "policy." What Defendant calls the "Certificate" copies what Defendant also calls a "policy." Compare Defense Ex. 1 (what Defendant claims is a "policy") and FAC, Ex. B (which has the word "Certificate" on Page 1, but then policy terms starting on Page 2 of the same document). Defendant's documents and these authorities confirm what Plaintiff already alleged in her complaint: that there is no meaningful difference between a "certificate" and "policy" or a "certificate holder" and a "policy owner." FAC, ¶¶ 4, 5, 14, fn. 2;

*see also* Cal. Ins. Code § 10509.953(o) (in California, "policy owners" and "certificate holders" are the same thing); *accord* § 10113.1. The distinctions Defendant tries to manufacture are wholly illusory and should be ignored. There was a delivery *in California* for purposes of The Statutes.

### B. Conflict of Laws Principles Also Support Application of The Statutes

Even if the Court is not convinced by Plaintiff's statutory interpretation, conflict of laws principles also support application of The Statutes to Plaintiff's policy. Ultimately, Defendant disputes the application of one state's laws over another. As the party seeking to apply another state's law, Defendant carries the burden of proof on that issue. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006 (9th Cir. 2001). Defendant has not met its burden on this Motion to Dismiss.

In determining any choice of law issue, the choice of law principles of the forum state are used. *Abogados v. AT&T,* 223 F. 3d 932, 934 (9th Cir. 2000). In turn, California applies the governmental interest test. First, "before a California Court makes a choice of law, it first considers the actual stake that potentially-concerned states have in the litigation." *Roesgen v. American Home Products Corp.,* 719 F. 2d 319, 320 (9th Cir. 1983). There is a preference to apply the forum-state's law. *Id.*

Here, Defendant never tells us what Illinois law says or what its public policies might be. Nonetheless, when we actually look at Illinois law we see there are obvious differences. For example, Illinois allows for shorter grace periods. 215 ILCS 5/224. And Defendant points to no protection, in Illinois, like California's right to designate a third party to receive important insurance notices.

Given these conflicts, the greater interest of and connection with California will nonetheless control. If one gets to the second step in the "governmental interest" test, the job is then to determine whether application of the foreign states' laws to the case at hand will "significantly further" the foreign states interests. *Strassberg v. New England Mut. Life Ins. Co.,* 575 F.2d 1262, 1264-65 (9th Cir. 1978). If application of foreign law will not significantly advance the interests of the foreign state, that ends the inquiry and a California court will apply its own law. *Id.* And even if the foreign law *will* significantly advance the interests of the foreign state, the final step is to do a "comparative"

analysis of what state has the greater interest or connection. *Id.* For example, in *Strassberg,* the policy holder first lived in New Jersey, bought a policy from a company domiciled in Massachusetts, but sold by an agent out of New York. *Strassberg* at 1263. Premium payments were made to the New York office. Later the same year, the insured moved to California, and continued paying premiums from California. The insured died two weeks after his policy was terminated for non-payment. The *Strassberg* court ruled that California law applied because of the "significant relationship between the beneficiary and the insured and California and the dominant interest of California in this matter." *Id*. at 1263-64 (noting that New York law did not apply because the insureds were not "New Yorkers.").

Defendant has not attempted to show any public policy in Illinois that would be impaired by following California law or that would be furthered by applying Illinois law here. Rather, Illinois has no interest in this matter, certainly not enough of an interest to overtake California's interest in protecting its elderly citizens. Indeed, Defendant is not domiciled in Illinois and neither Plaintiff nor her late mother ever were.

Furthermore, Plaintiff and her mother lived in California at all relevant times and Defendant knew where they were living here. The insured also paid, and Defendant accepted, premiums from California for years. Ms. Stowell passed away in California, and Plaintiff – the sole beneficiary under the policy – continues to live in California. Policy benefits would have been paid – i.e. the contract would have been performed – in California. See *California Casualty Indemnity Exchange v. Pettis,* 193 Cal.App.3d 1597, 1607 (1987) (when choosing between conflicting laws for insurance contracts, particular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk). And all communication with the insured, including the claim denial, all communications regarding reinstatement, and notification to the insured that JC Penney had been assumed by Stonebridge and then Transamerica, occurred in California. Finally, the original insurer here – "J.C. Penney Insurance Company" – was once a California domestic corporation availing itself of all of California's laws and protections. RJN Ex. 2, Record of the California Secretary of State. California has the much greater interest considering all the conduct occurring in California involving California citizens, California risk, and a California insurer. *Cf.*

*Palmquist v. Stand. Acc. Ins. Co.*, 3 F. Supp. 356, 357 (S.D. Cal. 1933) ("The policy was applied for, delivered, and the premiums paid in California. It is therefore a California contract.").

Defendant's choice of law clause attempting to pick Illinois law does not save it.[2] The California Supreme Court recently confirmed California's multi-step choice of law analysis when there is such a clause: "[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue. ...' If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." *Pitzer College v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 100–01 (2019) (internal citations and footnotes omitted).

Here, Defendant cannot survive the first step. There is no relationship, let alone a substantial one, between these parties (Transamerica and Plaintiff) and Illinois. Whatever relationship there was left along with J.C. Penney. As *Pitzer* confirms, "that is the end of the inquiry." *Pitzer* at 101.

Even if we move on to the second step of the analysis, Defendant fails that step too. Illinois law is contrary to a fundamental policy in California to demand more generous grace periods from insurers and stronger notices and warnings of lapses as confirmed by The Statutes' legislative history. RJN Ex. 1. Indeed, it is indisputable that it is the public policy of California to avoid insurance forfeiture on any reasonable showing. *Klotz v. Old Line Life Ins. Co. of Am.*, 955 F. Supp.

---

[2] As a threshold matter, it is unclear if there is a relevant choice of law clause at issue in this case. The policy documents attached as Exhibit B to the FAC include no such provision, but Defendant's version attached as Defense Exhibit 1 does include one. Frankly, the convoluted history does not lend itself to disposition on a motion to dismiss.

1183, 1188 (N.D. Cal. 1996). And as already discussed above, California has the materially greater interest here over Illinois given its significantly greater contact with the parties and issues. Again – especially when accepting all of Plaintiff's allegations as true along with all reasonable inferences- the Statutes apply to this policy.

### C. California's Renewal Principles Also Require Application Of the Statutes to this Policy

Next, when an insurance policy is renewed, any changes in the law that occurred prior to the renewal are incorporated into the policy. *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927-28 (9th Cir. 2012) *citing Modglin v. State Farm Mut. Auto. Ins. Co.*, 273 Cal. App. 2d 693, 700 (1969); *Cerone v. Reliance Std. Life Ins. Co.*, 9 F. Supp. 3d 1145, 1149 (S.D. Cal. 2014); *BellCare Nurses Registry Inc. v. Continental Casualty Company*, 25 So. 3d 13, 15 (Fl. Dist. Ct. App. 2009). *Modglin* is on point because there the court held that an insurance policy purchased in Arizona and later renewed in California was governed by an uninsured motorist statute covering policies "issued or delivered" in California on account of renewal after the statutes went into effect. *Modglin*, 273 Cal. App. 2d at 695-697, 700-701.

Thereafter, the Ninth Circuit in *Stephan* and Southern District in *Cerone* reaffirmed the renewal principle in other insurance contexts. *See Stephan*, 697 F.3d at 927-929 (applying the renewal principle in context of determining the validity of discretionary clauses in disability insurance policies); *Cerone,* 9 F. Supp. 3d at 1149, 1151–1152 (recognizing renewal principle in determining validity of discretionary clause in an insurance policy covering accidental death). And the only two Districts to apply the renewal principle in the context of these Statutes have both confirmed that the renewal principal applies and that the Statutes, therefore, apply to pre-2013 life policies. *Bentley v. United of Omaha Life Insurance Co.,* 371 F.Supp.3d 723, 735 (C.D. Cal. 2019) ("A Class Policy renewed when a premium payment was made after the Effective Date, regardless of whether the payment was an annual or a subannual premium payment"); *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1027 (S.D. Cal. 2019).

Here, this policy renewed after enactment of The Statutes just like the policies in *Bentley* & *Thomas*, thereby incorporating The Statutes. FAC, ¶¶ 5, 7, 16, 43; *see also* FAC, Ex. B at Page 2

(discussing "renewal" premiums). Moreover, the reason why courts recognize a renewal is because the way the insurers write these contracts of adhesion, the *entire* policy is placed in jeopardy every time a premium becomes due, no matter how many prior premiums were paid. That jeopardy subsides if and only if the next premium payment is made. The jeopardy (threat of total termination) will inevitably crop up again because The Policy retains no memory of or has no sympathy for the prior payments. The policy therefore revives, refreshes, or "renews" every time one takes it out of jeopardy. And when the policy protections are renewed, it is only "for a period of time that the payment covered." *Thomas,* 424 F.Supp.3d at 1027.

Nobody forced Defendant to write the policy this way. The analysis may have been different if one receives something for their partial payments – such as if after paying 29 out of 30 premiums, one payment is then missed, but the insurer still pays 29/30 of the benefit upon a death. Here, though, the right to *any* benefit is only as good as the latest payment. Viewed from the insurance company's perspective, the company gets a new ("renewed") right to take all of premium for no cost – exactly what it tried here. And it is these key features – i.e. the penalty of total termination whenever premiums are due, with possible reinstatement – that is at the heart of the *Thomas* and *Bentley* analysis and is why insurance policies written this way effectively renew and, thus, incorporate intervening changes in law. See *Thomas* 424 F. Supp. 3d at 1026-28 (Policy that included regular premium requirements and a provision for termination due to non-payment, was "renewed when a premium payment was made after the Effective Date" regardless of when the premium "was actually due"); *Bentley*, 371 F. Supp. 3d at 735-36.

The same features are in this policy. It is undisputed that the policy could be (and according to Defendant was) entirely forfeited if one payment was missed. In short, the analysis in *Bentley, Thomas, Modglin,* and related cases, applies with equal force to this policy. Actually, the case for renewal is stronger here than in prior cases because here Transamerica actually formally re-issued the certificate, expressly voided the prior certificate, and swapped itself in as a new counterparty to the contract and then issued a different insurance contract – all *after* enactment of the Statutes. *See*

FAC Ex. B at TLIC 000016 ("This Certificate supersedes any Certificate previously issued to you").[3]

### D. Defendant's Argument that This is a "Group" Policy is Erroneous.

Finally, Defendant's "Group" policy arguments also fail. As a threshold matter, the finding that a policy is a "Group" policy only potentially relieves an insurer of furnishing the third-party designation right under Section 10113.72. That section is the only one that expressly applies its protections to "[a]n individual life insurance policy." Cal. Ins. § 10113.72(a).

Defendant tries to graft a similar limitation onto Section 10113.71(b) which requires pending notices of lapse and termination. But that sub-section expressly states that it applies, initially, to any "life insurance policy," which is then defined in sub-paragraph (c) to mean individual *and* group policies unless otherwise provided. Stated differently, if lawmakers wanted to exempt Group policies from *all* of Section 10113.71(b)'s requirements, they would have ultimately styled that paragraph more like Section 10113.72, i.e. they could and would have begun the section by stating that it applies only to "An individual life insurance policy." They did not.

Ultimately, the proper way to interpret 10113.71(b) is not to completely exempt Group policies under any circumstances, but rather, *only from the things that were never required of Group policies to begin with.* I.e., insurers must still provide a written 30-day notice of pending lapse and termination to the named policy owner, whether it is for a group *or* individual policy. Cal. Ins. § 10113.71(b). But if the policy is truly a Group policy, the insurer need not *also* send that notice to a designee (which would have been named pursuant to Section 10113.72), or a known assignee or "interested" person. On the other hand, exempting group policies from the *entirety* of 10113.71(b), as opposed to just the parts that expressly discuss group policy features, alters the words of the statute and inserts qualifying provisions or assumed intentions that do not appear on the statute's

---

[3] Also, the document purportedly issued in August of 1992 (Defense Ex. 1) says that the policy will be construed in accordance with the laws of the State of Illinois. No such provision exists in the policy issued by Transamerica (FAC, Ex. B). The 1992 documents also contain specific terms and conditions regarding "renewal conditions" while the latter documents do not. Other differences exist such as which entity would be assuming the actual obligation to insure. Plaintiff is informed and believes that when Stonebridge Life Insurance Company assumed obligations, similar changes were made, including but not limited to the provision that the Group Policy would be deemed to have been issued in the State of Washington or possibly some other jurisdiction.

face. *Cf. In re Hoddinott,* 12 Cal.4th at 1002-03 (1996). Such an interpretation also ignores the mandate that these Statutes are to be construed with an eye toward *limiting* forfeitures of coverage and *promoting* consumer protections. Defendant's interpretation impermissibly does the opposite.

Ultimately, though, Defendant's interpretation is academic because its policy is not truly a "Group" policy as the Insurance Code defines that term. Actual "Group" policies are specially defined by the Insurance Code. The "only forms of group life insurance" recognized in California are set out in the Chapter 2 of Part 2 of the Insurance Code. Cal. Ins. § 10201 ("The only forms of group life insurance are those set forth in this chapter."); 39A Cal. Jur. 3d Insurance Contracts § 643. In turn, California law recognizes group insurance (and group annuities) only for members of specific identified groups, such as – most commonly – employees of one employer, or members of a labor union. (*See, e.g., id.* §§10202, 10102.8, 10102.81, 10203, 10203.1, 10203.2, 10203.4, 10203.7.) It makes sense that fewer protections are necessary to safeguard members of actual group policies because those members have other people or offices looking out for them, and perhaps paying their premiums, such as their employer, or their labor union. Again, the Statutes' legislative history supports a more limited definition of the term "Group" Policy as only applying to insurance policies "set up through a third party, such as an employer, who may pay all or some of the premiums," and where, consequently, the termination is handled through a "separate process" involving this third party. RJN Ex. 1 at 057. Those are not features of *this* policy where the insured and the payer of the premiums are the same person.

Here, in contrast, Defendant's policy does not have that fundamental feature of a third party advocate such as an employer or labor union that can lawfully issue Group policies or provide protections that the insurance companies themselves do not. At bottom, Defendant has not identified and cannot identify any category of recognized Group policies that would cover the Subject Policy.[4] Defendant's policy simply does not count as a "Group" policy as the California

---

[4] Nor is there any indication that Defendant qualifies for a group policy designation, under Section 10204.5, for policies specially approved by the California Insurance Commissioner. There is no indication – let alone in the pleadings – that the Commissioner approved issuance of the policies at issue here as required by Insurance Code section 10204.5(a). Also, one of the requirements of section 10204.5 is that there be "a common enterprise or economic or social affinity or relationship among members of the group" to whom the policies may be issued, *id.* at §10204.5 (a)(2)), and there is no indication that Plaintiff was a member of such a common enterprise or had any relationship to others

Insurance Code uses that term. In fact, Defendant's policy does not fit Illinois' definition of a Group policy either. *See* 215 ILCS 5/230.1 ("Group Insurance Definition").[5] Defendant cannot, therefore, benefit from any potential carve-out for statutory Group policies in The Statutes, even if we assume there is a relevant one. Defendant's argument that it qualifies for a potential "Group" policy exception just because it wrote that word into its Policy fails. Defendant's motion should be denied in full.

## IV. CONCLUSION

Defendant's motion should be denied in full. Should the Court feel, though, that the motion to dismiss should be granted even in part, then Plaintiff respectfully requests leave to amend as such leave should be freely given. Fed. R. Civ. Proc., Rule 15(a).

DATED: July 28, 2020

**NICHOLAS & TOMASEVIC, LLP**

By: _/s/ Alex Tomasevic_
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Email: craig@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff

---

to whom the policies were issued. Also, Defendant has not shown, as it must, that the "group" was formed "in good faith for purposes other than obtaining insurance." *See id.* at § 10204.5(a)(5). It is equally likely, rather, that the "group" structure was intentionally created by J.C. Penney *only* to sell life insurance, and perhaps to try to skate around requirements that attach when the policy is properly characterized as an "individual" policy. The contract entered into by Plaintiff cannot be considered to be a Group policy under California law, especially on this record or lack of record.

[5] For example, this is not an employer policy as authorized under subparagraph (a) of Section 230.1, nor is this a policy by a creditor limiting the benefit to the amount of indebtedness as referenced in subparagraph (b).